## Ratliff v. Ratliff.

April 27, 1948.

V. R. Bentley for appellant.

J. E. Childers for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Reversing.

Appellant filed her petition against appellee on the thirteenth day of February, 1946, wherein she sought alimony but did not ask for a divorce. Evidence was taken by both parties, but the case was not submitted until more than a year after the filing of the petition, and at the expiration of a year appellee filed his answer and counterclaim, wherein he sought a divorce from appellant on the grounds of abandonment and cruel and inhuman treatment. Further evidence was taken before the Master Commissioner, who recommended that appellee be granted a divorce, and that appellant be given the custody of the child born on the eighth day of August, 1946; he further recommended that appellee pay to appellant the sum of $25 per month for the support of the child, and that appellee be required to pay the costs of the action, including a $50 fee for appellant's attorney. Exceptions were taken to the Commissioner's report, which were overruled by the Court, and judgment was entered in accordance with the recommendations of the Master Commissioner. Appellant appeals from so much of the judgment as denies her alimony.

This Court is without power to reverse a judgment of divorce; but we may review the soundness of the Chancellor's decision in that respect to determine whether the wife is entitled to alimony. KRS 21.060; Rayburn v. Rayburn, 300 Ky. 209, 187 S. W. 2d 804. It is first insisted that the pleadings do not support the judgment, because no answer was filed, and that the pleading which was filed and designated amended answer and counterclaim does not deny the allegations of the petition. We find no merit in this contention, because the issues were formed by the counterclaim and reply.

We will now examine the evidence to determine the soundness of the Court's decision in granting a divorce to appellee. The only witnesses on this feature of the case were appellant and appellee. The parties were married on the twenty-sixth day of October, 1945, twenty-two days after appellee's discharge from the Army. They kept house until the latter part of November, 1945, at which time Mr. Ratliff suffered a relapse of malarial fever which he had contracted while in the armed forces. He was hospitalized at the Veterans' Facility in Huntington, West Virginia, and remained there for seven weeks, during which time appellant made her home with her father. Before appellee entered the hospital appellant became pregnant, and their child was born on August 8, 1946, which was six months after the petition for alimony was filed and approximately six months before the counterclaim was filed. To sustain his cause for divorce, appellee testified that when he first became sick his wife complained about his condition, and about living with a sick man and raising a family by him. He likewise stated that she complained about his keeping a foot locker locked in the house and not giving her a key to it. That she would search his pocketbook every time he left home and would check his money. She questioned him about some money his father was holding for him, and insisted that if he did not get the money in his own name in the bank she would leave him. She did not visit him at the hospital and wrote him only twice, although he wrote her each week. He stated that when he returned from the hospital he went to her father's home and asked her to live with him, and she refused to come back. Appellant testified that appellee gave her only $125 during their married life, and that she was required to expend more than $200 in maintaining the household while they lived together and to maintain herself after appellee went to the hospital. She testified that appellee returned from the hospital on the twenty-eighth day of January, 1946, and spent the night with her at her father's home; that they engaged in sexual relations on that occasion, and appellee left the next morning before breakfast and never returned. The second day following he removed what little furniture they had in the house in which they previously had lived, and although she requested him to

leave her a part of the furniture, he refused to do so, although she had contributed to its purchase. She stated that she paid her own doctor bills until the time of confinement, but that appellee paid the hospital and doctor bills attendant upon the birth of the child. However, he told her that he would not support the child unless he could have his custody. She testified that he had approximately $1,000, but refused to provide for her, and for that reason she would not return to his home. She stated that she offered to go to the hospital with him, but he said that they had no money, and that they did not want visitors at veteran hospitals. She said she asked appellee's parents to let her accompany them to the hospital on several visits they made, but that they would not notify her and would leave without her. She said she received three letters from him while he was in the hospital, and that she wrote him two. She said that she asked him to come back to her father's house where they could live together, but he said nothing and left. She related that thereafter he passed her house several times and neither stopped nor spoke. Her last deposition was given when the baby was nine months old, and she testified that he had come to see the baby only once, which was four days after the child was born. Mr. Ratliff did not deny any of appellant's testimony except to say that she refused to live with him.

We think the evidence in this case did not justify the granting of a divorce to appellee. The undenied testimony in the record proves that appellee was not without fault in bringing about the difficulties which have arisen between this young couple. Where the Appellate Court is of the opinion that the husband should not have been granted a divorce, it should reverse the judgment and direct that an award of alimony be entered if the husband has any property or earning power. This record shows appellee to be worth almost a Thousand Dollars, and that he receives a pension from the Government, out of which an allotment of $55.20 per month was made by the Veterans Administration to appellant and her child during the period of the separation of the parties. There is no other evidence as to the amount of the pension appellee is receiving. However, we have consulted the Acts of Congress and regulations of the Veterans Administration in respect to

pensions and allotments, and find that where the wife is separated from the husband and has custody of one child, the Veterans Administration allots to the wife and child forty per cent of the pension. American Law of Veterans, 1946 Edition, Section 689, page 564. Capitalizing $55.20 at forty per cent, it appears that appellee is receiving a pension of $138 per month. Upon divorce the wife is not entitled to an allotment, but, if proper application is made, the child will be entitled to $27.60 per month, being twenty per cent of the pension. American Law of Veterans, 1946 Edition, supra. Appellee is living at the home of his father and not maintaining a separate abode. We are of the opinion that appellant is entitled to the sum of $25 per month alimony, and $25 per month for maintenance for the child; the allowance for maintenance, however, to be credited by any allotment made to appellant for the child by the Veterans Administration, not to exceed the sum of $25 per month. We therefore direct that, on return of the case, the judgment in respect to alimony and maintenance be set aside and that another be entered in conformity with this opinion. If the condition of the parties should change, upon application of either, the Court will reopen the case and enter such judgment as the evidence may indicate to be proper in the change of circumstances.

The judgment is reversed for proceedings consistent with this opinion.